**Mykola HRAY, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 02–3209.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 23, 2003.

Decided Aug. 22, 2003.

Steven A. Morley, Morley, Surin & Griffin, Philadelphia, PA, for Petitioner.

Linda S. Wendtland, William C. Minick, Shelley R. Goad, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before ALITO, FUENTES and BECKER, Circuit Judges.

OPINION OF THE COURT

ALITO, Circuit Judge.

Mykola Hray, a Ukrainian national, petitions for review of the July 16, 2002 decision of the Board of Immigration Appeals ("BIA") that affirmed, without opinion, the decision of an Immigration Judge ("IJ")

denying Hray's application for asylum, withholding of deportation, suspension of deportation and, in the alternative, voluntary departure. For the reasons given below, we deny Hray's petition for review.

Hray was born at Dobrivlyany in the Ukrainian Soviet Socialist Republic on December 20, 1960. Administrative Record ("A.R.") at 187. He studied mechanical engineering at the Lvov Institute and worked as an engineer after completing his compulsory service in the Soviet Army. *Id.* at 53–55, 192. On September 5, 1990, Hray was admitted into the United States at John F. Kennedy International Airport on a tourist visa that expired on March 4, 1991. *Id.* at 187, 205. Hray remained in the United States beyond the time permitted on his visa and, on May 7, 1991, submitted an application for political asylum, claiming that he would be arrested in Ukraine for refusing to serve on active duty with the Soviet Army "[b]ased on [his] political opinion and conscience." *Id.* at 204, 207. Hray further claimed that, if he were to return to Ukraine, the authorities would single him out "[b]ased on [his] political activities in the past two years and [his] previous detention and interrogation in 1982."[1] *Id.* On June 19, 1991, the Immigration and Naturalization Service (the "INS") granted employment authorization to Hray.[2] *Id.* at 205. On September 12, 1995, the Bethlehem police arrested Hray on charges of indecent assault and attempted sexual assault. *Id.* at 104. On April 17, 1996, Hray pled nolo contendere in the Lehigh County Court of Common Pleas to the charge of indecent assault and was sentenced to serve one year of probation. *Id.* at 104–07.

On March 21, 1997, the INS served Hray with an Order to Show Cause charging him with deportability for exceeding the time permitted on his nonimmigrant visa, in violation of former Section 241(a)(1)(B) of the Immigration and Nationality Act of 1952, as modified (the "INA"), 8 U.S.C. § 1251(a)(1)(B) (1994).[3] A.R. at 226–30. On October 7, 1997, Hray conceded his deportability before an IJ. A.R. at 41. The IJ advised Hray that his asylum application was "very, very weak" and adjourned the proceeding to allow Hray an opportunity to apply for suspension of deportation, pursuant to former Section 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1) (1994). On June 2, 1998, the IJ noted that the problem with Hray's asylum application was that, based on his reading of the 1997 State Department Country Report and Profile, "conditions that existed in the Ukraine that have changed."[4] *Id.* at 75, 81. When asked by counsel to testify in support of his asylum application, Hray explained that he was afraid to return to Ukraine because his brother had recently been detained and threatened by armed men "[b]ecause he had visited America and they knew he had

1. In his asylum application, Hray stated that he had been a member of RUKH, a Ukrainian pro-democracy organization, and that he had attended anti-Soviet rallies between 1988 and 1990. A.R. at 204. He also wrote that, in 1982, he had been detained, beaten and interrogated for 10 days by the Soviet Militia for shouting a political/nationalist slogan. *Id.*

2. Since 1991, Hray has worked in a variety of semi-skilled manufacturing jobs in the Allentown, Pennsylvania, area. *Id.* at 55–57, 205.

3. Because Hray's deportation proceeding began before April 1, 1997, the amendments to the INA made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"), Pub.L. 104–208, 110 Stat. 3009, do not apply. IIRIRA § 309(c)(1).

4. The IJ stated that, despite continued problems, the "Ukraine has made remarkable progress evolving itself into a law-based society" and that the people of Ukraine had "done a lot of work in trying to make themselves into a democracy." A.R. at 75.

gotten money in America." *Id.* at 84. When asked by the IJ "for any other reason why he was afraid to return," Hray responded that he was "fearful that the same thing can happen to me as happened to my brother" and added that "the level of medical care [in Ukraine] is not as good as here." *Id.* The IJ noted that "fear of being victim of a crime in another country is not within the five factors protected by the Act." *Id.* at 85.

In support of his application for suspension of deportation, Hray testified that he would face extreme hardship if he were returned to Ukraine on account of his medical condition, since he was on prescription medication for hypertension and had been hospitalized for three days in January 1995, and because "[a]ll the factories are closed." *Id.* at 60–66. Hray admitted that he had pled "no contest" to a charge of indecent assault in Pennsylvania state court and served probation. *Id.* at 68. The IJ noted that Hray's plea might be a statutory bar to his application for suspension of deportation. *Id.* at 69–73. The IJ adjourned the proceeding to allow Hray a chance to obtain a medical report and the court records of his plea. *Id.* at 86–87. On August 21, 1998, Hray again appeared before the IJ, and the medical and court records were placed into evidence. *Id.* at 95–96.

On October 27, 1998, the IJ issued a written opinion denying Hray's claim for asylum and withholding of deportation on the ground that Hray had not demonstrated persecution on account of any of the five factors enumerated in INA § 101(a)(42)(A) and was therefore "not a 'refugee' as defined by law." A.R. at 32–33. The IJ denied Hray's claim for sus-

pension of deportation because Hray had "utterly failed to show that he would suffer extreme hardship if required to depart from the United States" and, furthermore, was "precluded from the finding of good moral character required for suspension of deportation as a result of his conviction for indecent assault." *Id.* at 34. Finally, the IJ noted that Hray was ineligible for voluntary departure because he had not displayed the requisite good moral character for the five years preceding his application. *Id.* Hray filed a brief with the BIA arguing that he had met his burden of showing that he qualified for suspension of deportation and had demonstrated a "well-founded fear of persecution by non-governmental actors." *Id.* at 6–8. On November 20, 2000, the BIA affirmed the results of the decision of the IJ without issuing a separate opinion, pursuant to 8 C.F.R. § 3.1(a)(7) (2002).

In this petition, Hray asserts that the IJ prevented him from offering evidence of past persecution in support of his application for political asylum and withholding of removal. Appellant's Br. at 9–18. Hray also claims that the IJ erred in concluding that Hray's 1996 nolo contendere plea to indecent assault was a bar to his receiving suspension of deportation and voluntary departure. *Id.* at 19–28. Finally, Hray argues that the IJ ignored substantial evidence that showed Hray would suffer extreme hardship if he were returned to Ukraine. *Id.* at 28–30.

Because the BIA affirmed the results of the decision of the IJ without issuing a separate opinion, pursuant to 8 C.F.R. § 3.1(a)(7)(iii) (2002), we review the decision of the IJ.[5] *Abdulai v. Ashcroft,* 239

---

**5.** The issue of whether the "streamlining" procedure of 8 C.F.R. § 3.1(a)(7) violates Due Process and conforms with principles of administrative law is presently before an en

banc panel of this Court. *Dia v. Ashcroft,* No. 02–2640 (3d Cir. argued May 28, 2003). However, because Hray does not challenge

F.3d 542, 548–49 & n. 2 (3d Cir.2001). We review the IJ's interpretation of the INA [6] under the deferential standard of *Chevron, U.S.A. v. Natural Res. Def. Counsel,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Lukwago v. Ashcroft,* 329 F.3d 157, 166 (3d Cir.2003). Accordingly, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. On the other hand, "we must treat ... findings of fact as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Lukwago v. Ashcroft,* 329 F.3d 157, 167 (3d Cir.2003) (quoting. 8 U.S.C. § 1252(b)(4)(B)). Finally, "[a]n order of deportation or exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him." INA § 106(c), 8 U.S.C. § 1105a(c) (1994).

Section 208 of the INA provides that "[t]he Attorney General may grant asylum to an alien ... if the Attorney General determines that such alien is a refugee within the meaning of [INA § 101(a)(42)(A) ]." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is defined as an alien "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his or her home] country *because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.*" INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A)

(emphasis added). Thus, past persecution, or a well founded fear of future persecution, does not render an alien eligible for asylum, unless the persecution is "on account of" one of the five grounds enumerated in Section 101(a)(42)(A). *INS v. Elias–Zacarias,* 502 U.S. 478, 482, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Furthermore, "[t]he asylum applicant bears the burden of establishing that he or she falls within th[e] statutory definition of 'refugee.'" *Abdille v. Ashcroft,* 242 F.3d 477, 482 (3d Cir.2001). We will uphold the IJ's finding that an applicant lacks the requisite well-founded fear of persecution, if statements in the relevant State Department Country Report demonstrate that the persecution claimed by the applicant has ceased. *Kayembe v. Ashcroft,* 334 F.3d 231, 236–37 (3d Cir.2003). In order to receive withholding of deportation under former Section 243(h) of the INA, the applicant must show that he faces a "clear probability" of persecution in his home country "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h) (1994); *INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). Because the "clear probability" standard of former Section 243(h) is more stringent than the "well founded" fear standard of Section 208, an applicant who fails to qualify for asylum is necessarily disqualified from receiving withholding of deportation. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Stevic,* 467 U.S. at 430, 104 S.Ct. 2489.

Hray's claim that the IJ prevented him from offering evidence of past persecution

the streamlining procedure, we need not address this issue in the present appeal.

6. Because Hray's deportation proceeding was in progress on April 1, 1997, the amendments to the INA made by the IRIRA do not apply. IIRIRA § 309(c)(1). However, the transition-

al rules that preclude judicial review of certain discretionary decisions of the Attorney General, including suspension of deportation, do apply, since Hray's final order of deportation was entered "more than 30 days after [September 30, 1996]." *Id.* § 309(c)(4)(E).

in Ukraine is completely unfounded. On June 2, 1998, the IJ asked Hray whether he wished to expand on his testimony concerning his fear of criminal gangs and poor medical treatment in Ukraine that had been elicited by counsel. A.R. at 85. Hray declined the IJ's invitation. *Id.* Furthermore, Hray did not raise the issue of past persecution with the BIA, since he merely reiterated his claim that "he fear[ed] returning to Ukraine because of criminal gangs which [sic] attacked his brother upon his return to the country." *Id.* at 7. We are therefore precluded from considering the claims of past persecution contained in Hray's 1991 asylum application, INA § 106(c), 8 U.S.C. § 1105a(c) (1994), and must consider solely his claim that fear of criminal gangs in Ukraine constitutes fear of political persecution. Because "ordinary criminal activity does not rise to the level of persecution necessary to establish eligibility for asylum," *Abdille*, 242 F.3d at 494, Hray did not meet his burden of showing persecution on account of one of the protected grounds set forth in Section 101(a)(42)(A) of the INA.[7] *Lukwago*, 329 F.3d at 167. Furthermore, because the "well founded" fear standard of Section 208 is less stringent than the "clear probability" standard of former Section 243(h), Hray is also disqualified from receiving relief in the form of withholding of deportation. *Cardoza–Fonseca*, 480 U.S. at 449, 107 S.Ct. 1207; *Stevic*, 467 U.S. at 430, 104 S.Ct. 2489.

Hray's application for suspension of deportation is governed by former Section 244(a)(1) of the INA, 8 U.S.C. 1254(a)(1) (1994). Under former Section 244, the Attorney General may offer suspension of deportation to an alien who has been physically present in the United States for at least seven years, possesses good moral character, and "whose deportation would, *in the opinion* of the Attorney General, result in extreme hardship to the alien or to [a qualifying relative] who is a citizen of the United States or an alien lawfully admitted for permanent residence." INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994) (emphasis added). The use of the phrase "in the opinion" indicates that the determination of whether the applicant will face extreme hardship is at the discretion of the Attorney General. *Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir.1993). The applicable transitional rules promulgated under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"), Pub.L. 104–208, 110 Stat. 3009, preclude us from considering an appeal from "any discretionary decision under section ... 244 ... of the [INA]." IIRIRA § 309(c)(4)(E). Accordingly, we may not consider Hray's argument that he would suffer extreme hardship if forced to return to Ukraine, on account of his medical condition and the dearth of employment opportunities.[8] Because Hray is thus rendered ineligible for suspension of

---

7. We note that Hray's application for asylum and withholding of deportation would fail even if Hray had testified before the IJ concerning the past persecution described in the 1991 asylum application. As noted by the IJ, statements in the 1997 Country Report and Profile indicate that conditions in the now sovereign nation of Ukraine have improved considerably since 1990. A.R. at 75, 81. Such statements constitute a proper basis for rejecting Hray's claim that he fears persecution on account of his political beliefs. *Kayembe*, 334 F.3d at 236–37 (3d Cir.2003).

8. In any event, even if we could reach this argument, in light of Hray's relative youth, educational background, professional experience, A.R. at 53–55, 192, and since he has a brother, father and teenage daughter who live in Ukraine, *id.* at 58–59, we would not be compelled to find that Hray would suffer extreme hardship if returned to Ukraine, and would therefore uphold the IJ's decision. *Lukwago*, 329 F.3d at 167.

deportation, we need not consider his contention that the IJ erred by concluding that Hray's plea to indecent assault constituted a crime of moral turpitude under the INA.[9] Finally, because Hray did not discuss the question of his eligibility for voluntary departure in his appeal before the BIA we are barred from addressing the issue in the present petition. INA § 106(c), 8 U.S.C. § 1105a(c) (1994).

For the foregoing reasons, Hray's petition for review of the decision of the BIA is denied.

---

**9.** We note that, because it can reasonably be argued that the "touching of the sexual or other intimate parts [of another person] . . . for the purpose of gratifying sexual desire" 18 Pa. Cons.Stat. Ann. §§ 3101, 3126(a)(1), constitutes a crime of moral turpitude for purposes of the INA, we would be bound by the IJ's decision that Hray does not possess the requisite good moral character. *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778.